UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JUDSON WATKINS,

                        Plaintiff,

      v.                                                      9:19-CV-1561
                                                                   (TJM/TWD)

JANE DOE, et al.,

                        Defendants.

---

APPEARANCES:

JUDSON WATKINS
Plaintiff, Pro Se
02-B-1371
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

THOMAS J. McAVOY
Senior United States District Judge

# DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Judson Watkins commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order filed on January 23, 2020, the Honorable Thomas J. McAvoy granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that plaintiff's Eighth Amendment excessive force claim against defendant John Doe survived sua sponte review, and that the remaining Section

1983 claims were subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 6 ("January 2020 Order"). Because plaintiff was not able to identify the only defendant remaining in the action by name, the Court directed the Clerk of the Court to send a copy of the complaint and the January 2020 Order to the Onondaga County Attorney's Office and requested that the Onondaga County Attorney's Office, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam), attempt to ascertain the full name of the John Doe defendant, described in the complaint as an official working at the Onondaga County Jail and "SERT Team member" involved in a use-of-force incident related to an extraction of plaintiff from his cell on or about February 4, 2017. *Id*. at 13.

On February 28, 2020, the Chief Deputy County Attorney for the Onondaga County Attorney's Office filed a letter wherein he stated, in pertinent part, that "the sheriff's records show a SERT use-of-force incident related to an extraction of plaintiff on 2 February, 2017," with the following "SERT members" involved: Deputy John Uzunoff, Deputy John Drapikowski, Deputy Jeremy Ferris, Deputy Matthew Murphy, Deputy John Bennett, and Deputy Codee Phillips. Dkt. No. 7 ("Status Report") at 1. The Status Report further indicated that "the sheriff's records do not show which, or that any, of the SERT members is John Doe who punched plaintiff in the face 15 times." *Id*.

By Decision and Order filed March 5, 2020, plaintiff was directed to review the Status Report and, to the extent he was able to do so, submit a proposed amended complaint which substitutes the named defendant(s) in place of the "Doe" defendant, and makes any other corrections necessary. *See* Dkt. No. 8.

Presently before the Court is plaintiff's amended complaint. Dkt. No. 9 ("Am. Compl.").

2

## II. DISCUSSION

### A. The Complaint and January 2020 Order

In his original complaint, plaintiff asserted claims based on alleged wrongdoing that occurred while he was incarcerated at the Onondaga County Jail awaiting re-sentencing. *See generally* Compl. The complaint was construed to assert the following claims against the defendants in their individual and official capacities: (1) an Eighth Amendment excessive force claim against defendant John Doe; (2) an Eighth Amendment medical indifference claim against defendant Jane Doe; (3) a harassment claim against defendant Cwirko; and (4) a claim against defendant Salvagni for failure to adequately address plaintiff's grievance(s) *See* January 2020 Order at 5.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that plaintiff's Eighth Amendment excessive force claim against defendant John Doe in his individual capacity survived sua sponte review. *See* January 2020 Order at 8-9, 14. Plaintiff's remaining claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. *Id.* at 6-15.

### B. Overview of the Amended Complaint

Plaintiff's amended complaint names the "SERT members" identified in the Status Report as defendants in place of John Doe, and asserts an excessive force claim against these defendants, as well as claims against defendants Cwirko, Salvagni, and Jane Doe, based on materially similar as well as new allegations. *See generally*, Am. Compl.[1] The

---

[1] The Clerk is directed to add the following individuals as defendants: (1) Deputy John Uzunoff; (2) Deputy John Drapikowski; (3) Deputy Jeremy Ferris; (4) Deputy Matthew Murphy; (5) Deputy John Bennett; and (6) Deputy Codee Phillips.

3

following new facts are set forth as alleged in the amended complaint.[2]

On or about February 4, 2017, at approximately 3:20 p.m., plaintiff was "informed that he had to relinquish a 'hypo allegenic [sic] blanket' authorized and issued to him by the OCJ medical department. Am. Compl. at 6. When plaintiff declined, defendants Deputy John Uzunoff, Deputy John Drapikowski, Deputy Jeremy Ferris, Deputy Matthew Murphy, Deputy John Bennett, and Deputy Codee Phillips (collectively, the "SERT Team") "stormed" plaintiff's cell and "repeatedly struck [him] with closed fists, and brutally kicked him about the head, face, and body while . . . forcibly extract[ing] [him] from his cell[.]" Id. at 6-7.

As a result of the assault, plaintiff "suffered serious physical pain and injuries to his head, body, and face evincing lacerations, bruises, and abrasions, including[ ] a concussion and trauma from blunt force impact to [the] head, face, and body." Am. Compl. at 7-8.

Following the assault, plaintiff was "denied proper and expedient medical attention" by defendant Nurse Jane Doe, who "superficially examined him" and then "asserted that nothing was wrong" even though "plaintiff showed visible bruises, contusions, abrasions, and lacerations." Am. Compl. at 8. As a result, "plaintiff's pain and suffering was extended . . . until he was finally provided with proper medical attention." Id.[3]

"[P]rior to and following the . . . brutal assault . . ., [defendants] Salvagni and . . . Cwirko engaged in a concerted campaign of harassment, intimidation, and provocation which

---

[2] Plaintiff attached exhibits to the original complaint. See Dkt. No. 1-1 ("Exhibits"). Although plaintiff did not re-attach these exhibits to the amended complaint, he expressly references one of them in his pleading. See Am. Compl. at 8. Accordingly, and in light of plaintiff's pro se status, the Court will consider the Exhibits as having been incorporated by reference into the amended complaint. The Clerk is directed to attach a copy of the Exhibits to the amended complaint.

[3] The amended complaint does not allege when plaintiff received medical attention. However, the Exhibits show that plaintiff was taken to an outside hospital two days after the alleged assault. See Dkt. No. 1-1 at 13-18, 31.

lead up to, and extended to the plaintiff suffering [a violation of his] constitutional rights to be free of assault, cruel and unusual punishment, due process, and equal protection of the laws." Am. Compl. at 8-9. Defendants Salvagni and Cwirko "deprive[d] the plaintiff of religious worship, and confin[ed] [him] to his cell without according him due process of law." *Id*. at 9. Defendants Salvagni and Cwirko also wrote "bogus misbehavior reports accusing plaintiff of all sorts of inmate rule violations." *Id*.

Liberally construed, the amended complaint asserts the following claims against the named defendants in their individual and official capacities: (1) Eighth Amendment excessive force claims against the SERT Team; (2) an Eighth Amendment medical indifference claim against defendant Jane Doe; (3) an Eighth Amendment harassment claim against defendants Salvagni and Cwirko; (4) a Fourteenth Amendment equal protection claim against defendants Salvagni and Cwirko; and (5) a Fourteenth Amendment due process claim against defendants Salvagni and Cwirko.[4]

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C. Analysis**

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a

---

[4] As noted, the amended complaint alleges that defendants Salvagni and Cwirko deprived him of "religious worship, . . . confin[ed] [him] to his cell without according him due process of law[,]" and authored "bogus misbehavior reports[.]" Am. Compl. at 9. However, plaintiff does not explain how or when he was denied "religious worship," or wrongly confined to his cell, or any burden or harm he suffered as a result. Nor does he allege any facts regarding the misbehavior reports he received, or any resulting discipline. In addition, plaintiff does not reference the First Amendment anywhere in the amended complaint. Thus, the Court does not construe the allegations in the amended complaint to assert either a free exercise or retaliation claim against defendants Salvagni and Cwirko.

5

pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the January 2020 Order and it will not be restated in this Decision and Order. *See* January 2020 Order at 2-4.

### 1. Official Capacity Claims

The legal standard governing official capacity claims asserted against a municipal officer was discussed at length in the January 2020 Order and it will not be restated in this Decision and Order. *See* January 2020 Order at 6-8.

As with the original complaint, the amended complaint lacks any allegations which plausibly suggest that any of the alleged wrongdoing occurred pursuant to a municipal policy or practice.

Accordingly, to the extent that plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Excessive Force Claims

The legal standard governing Eighth Amendment excessive force claims was discussed at length in the January 2020 Order and it will not be restated in this Decision and Order. *See* January 2020 Order at 8-9.

At this very early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment excessive force claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly

filed dispositive motion.

### 3. Medical Indifference Claim

The legal standard governing an Eighth Amendment medical indifference claim was discussed at length in the January 2020 Order and it will not be restated in this Decision and Order. *See* January 2020 Order at 9-10. The Court will add only that, where the basis for a prisoner's Eighth Amendment claim is a delay in the provision of medical treatment, "it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original); *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "The [presence] of adverse medical effects or demonstrable physical injury is one . . . factor that may be used to gauge the severity of the medical need at issue." *Smith*, 316 F.3d at 187. With respect to the subjective element, a delay in providing necessary medical care may constitute deliberate indifference when the delay occurred "as a form of punishment[,] ignored a life-threatening and fast degenerating condition . . . or delayed major surgery[.]" *Freeman v. Strack*, No. 99-CV-9878, 2000 WL 1459782, at *6 (S.D.N.Y. Sep. 29, 2000) (quoting *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999).

The amended complaint alleges that Nurse Jane Doe "superficially examined" plaintiff following the assault by the SERT Team, and "asserted that nothing was wrong" even though he "showed visible bruises, contusions, abrasions, and lacerations." Am. Compl. at 8. Plaintiff does not describe the nature or severity of these injuries, or allege facts which plausibly suggest that his injuries required emergency treatment or hindered his ability to

7

perform a life function. Nor does plaintiff identify any complaints that he made, or treatment that he sought, which defendant Jane Doe ignored or denied.

Furthermore, the Exhibits show that plaintiff was taken to an outside hospital for medical treatment two days after the alleged assault and examination by defendant Jane Doe, *see* Exhibits at 13-18, 31, and the amended complaint lacks any allegations which plausibly suggest that plaintiff's condition, which he does not allege was life threatening or fast degenerating, worsened over this two-day period. Moreover, the Exhibits show that plaintiff received minimal treatment at the hospital -- in the form of steri-strips placed over one eye and Tylenol -- for his injuries. *See* Exhibits at 13-26. Thus, the allegations in the amended complaint fail to plausibly suggest either that plaintiff was suffering from a serious medical condition when he was examined by defendant Jane Doe, or that the delay in treatment resulted in him suffering "sufficiently serious" harm. *Compare Hill v. Curcione*, 657 F3d. 116, 122 (2d Cir. 2011) (delay "sufficiently serious" if it could have resulted in "death, degeneration or extreme pain"), *with Chatin v. Artuz*, 28 Fed. App'x 9, 10-11 (2d Cir. 2001) (summary order) (two day delay in X-raying injured ankle failed to satisfy objective element); *see also Toliver v. City of New York,* No. 10-CV-5806, 2013 WL 6476791, at *5 (S.D.N.Y. Dec. 10, 2013) ("As to the objective element, Mr. Toliver alleges that he suffered bruising, broken skin, a bloody nose, and a swollen jaw. . . . When Mr. Toliver finally received treatment three days later, the medical examiner gave him painkillers and applied antibiotic ointment to his skin. . . . The minimal treatment that he ultimately received-treatment he does not complain about-leads to the conclusion that his injuries were not serious."), *report and recommendation adopted by* 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014); *Dallio v. Hebert*,

8

678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) (two black eyes, bruising in kidney area, kick marks and open laceration on knees not serious medical condition); *Rodriguez v. Mercado*, No. 00-CV-8588, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (bruises to head, back, and wrists sustained during excessive force incident not sufficiently serious); *Sonds v. St. Barnabas Hospital Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001) (holding that bleeding finger with ripped skin does not constitute serious medical condition); *Grant v. Borroughs*, No. 96-CV-2753, 2000 WL 1277592, at *4 (S.D.N.Y. Sept. 8. 2000) (even assuming plaintiff was in pain for two months, plaintiff's pain was not so severe as to constitute serious medical condition).

In addition, the amended complaint lacks any allegations which plausibly suggest that defendant Jane Doe knew that plaintiff was suffering from a condition of urgency, and nonetheless refused him medical treatment. Indeed, as noted, plaintiff does not allege that he requested and was denied any treatment by defendant Jane Doe. Nor does plaintiff allege that defendant Jane Doe, in opining that there was "nothing wrong" with plaintiff, restricted him in any way from returning to the infirmary in the event his pain intensified or his condition worsened. In other words, the amended complaint also lacks any allegations which plausibly suggest that defendant Jane Doe acted with deliberate indifference to plaintiff's serious medical needs.

Accordingly, plaintiff's medical indifference claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Harassment Claim

As noted in the January 2020 Order, "[v]erbal harassment and name calling, absent physical injury, are not constitutional violations cognizable under Section 1983." *See* January 2020 Order at 11 (collecting cases).

Plaintiff's allegations regarding alleged wrongdoing by defendants Salvagni and Cwirko are entirely conclusory. Moreover, as with the original complaint, the amended complaint lacks any allegations which plausibly suggest that plaintiff suffered a physical injury in connection with the alleged harassment carried out by defendants Salvagni and Cwirko.

Accordingly, plaintiff's harassment claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Equal Protection Claim

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative,

under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Here, plaintiff alleges in conclusory fashion that defendants Salvagni and Cwirko violated his equal protection rights. Am. Compl. at 9. The amended complaint, however, lacks any allegations in support of this claim. Indeed, the amended complaint does not contain any allegations of purposeful discrimination directed at an identifiable or suspect class, and fails to identify any individuals treated differently than plaintiff under a similar situation.

Accordingly, plaintiff's Fourteenth Amendment equal protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. Due Process Claim

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1)

the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.[5] *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if

---

[5] For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id*.

12

under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, *Wolff*, 418 U.S. at 563-67). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, inter alia, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

In this case, plaintiff alleges, in conclusory fashion, that defendants Salvagni and Cwirko "confin[ed] [him] to his cell without according him due process of law" and authored "bogus misbehavior reports accusing plaintiff of all sorts of inmate rule violations." Am. Compl. at 9.

As an initial matter, the amended complaint does not contain any allegations regarding how long plaintiff was confined to his cell, why he was confined to his cell, or how he was denied due process. Moreover, it is unclear from the allegations in the amended complaint and documents attached thereto how much time plaintiff served in keeplock confinement or in a special housing unit as a result of any actions taken by either defendant Salvagni or defendant Cwirko. Thus, there is also no basis for this Court to plausibly infer that plaintiff suffered a deprivation of a liberty interest, thereby triggering the procedural safeguards of due process. *See Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination."); *Gill v.*

13

*Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005) ("[W]here no liberty interests are at stake, . . . the Court need not assess the adequacy of the process . . . received.").[6]

Accordingly, plaintiff's Fourteenth Amendment due process claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the Clerk shall attach a copy of the Exhibits (Dkt. No. 1-1) to the amended complaint; and it is further

**ORDERED** that the Clerk shall revise the docket to add the following individuals as defendants in place of John Doe: (1) Deputy John Uzunoff; (2) Deputy John Drapikowski; (3) Deputy Jeremy Ferris; (4) Deputy Matthew Murphy; (5) Deputy John Bennett; and (6) Deputy Codee Phillips; and it is further

**ORDERED** that plaintiff's Eighth Amendment excessive force claims against defendants Uzunoff, Drapikowski, Ferris, Murphy, Bennett, and Phillips **SURVIVE** sua sponte

---

[6] The alleged issuance of a false misbehavior report also does not, without more, give rise to a cognizable Section 1983 claim. *See Freeman v. Rideout*, 808 F.2d 949, 950, 953 (2d Cir. 1986) ("[T]he filing of unfounded charges is not *per se* a constitutional violation under section 1983[.]"); *Mitchell v. Senkowski*, 158 Fed. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate . . . violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, . . . , or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights . . . ." (internal citations omitted)).

14

review and require a response; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal, for service on defendants Uzunoff, Drapikowski, Ferris, Murphy, Bennett, and Phillips; and it is further

**ORDERED** that a response to the amended complaint be filed by defendants Uzunoff, Drapikowski, Ferris, Murphy, Bennett, and Phillips, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.  **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff and the Onondaga County Attorney's Office.

**IT IS SO ORDERED.**

Dated: April 13, 2020

Thomas J. McAvoy
Senior, U.S. District Judge